**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MARLYAND**

**EMILY DIETRICK**
9140 Covington Ridge Court
Mechanicsville, Virginia 23116
*Resident of Hanover County*

**STEVEN CONNELL**
4966 Lakiba Palmer Avenue
San Diego, California 92102
*Resident of San Diego County*

**BROCK DEEL**
10840 Percheron Drive
Jacksonville, Florida 32257
*Resident of Duval County*

**MONICA JONES**
1009 Wade Avenue
Raleigh, North Carolina 27605
*Resident of Wake County*

**TYLER SUITE**
124 St. Johns Street
Knightdale, North Carolina 27545
*Resident of Wake County*

Plaintiffs,

***Individually and on Behalf of All Similarly Situated Employees***

v.

**APEX SYSTEMS, LLC**
4400 Cox Road
Suite 200
Glen Allen, VA 23060

Serve: Carl Omohudro, Jr.,
4400 Cox Road, Suite 200
Glen Allen, VA 23060

Defendant.

Civil Action No.:

Collective Action Claim

Jury Trial Requested

## COLLECTIVE ACTION COMPLAINT FOR WAGES OWED

EMILY DIETRICK, STEVEN CONNELL, BROCK DEEL, MONICA JONES, and TYLER SUITE, Plaintiffs, by and through their undersigned counsel and The Law Offices of Peter T. Nicholl, hereby submit their Complaint against APEX SYSTEMS, LLC, Defendant, to recover unpaid wages, liquidated damages, interest, reasonable attorneys' fees and costs under Section 16(b) of the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. (hereinafter, "FLSA") and in support thereof, state as follows:

## INTRODUCTION AND BACKGROUND

Defendant Apex Systems, LLC ("Defendant") is a staffing agency that centers on finding potential job candidates for its clients. Defendant employs Account Managers to assist with finding the right candidates. Account Managers are assigned to work with Defendant's clients directly. These assignments are based on a client's specific hiring requirements. Account Managers are responsible for recommending potential candidates to Defendant's clients. This requires them to meet with clients on a regular basis. Regular interactions are required so that Account Managers can gather as much information as possible regarding a client's needs.

Defendant's Account Managers communicate these needs to Defendant's Recruiters. Account Managers inform Recruiters of a client's specific hiring criteria. Based on this criteria, Recruiters are responsible for finding potential candidates. They must ensure that each potential candidate meets the demands of Defendant's clients. Account Managers instruct Recruiters to follow these specific demands. Recruiters have to follow these instructions precisely. They have to do exactly what they are told. Finding potential candidates with the requisite credentials is the crux of their responsibilities.

Recruiters use basic software to complete their tasks. This primarily consists of online hiring databases. They would use the databases to search for candidates with the requisite credentials. Basic computer skills are all that is needed to perform these searches. These searches simply consist of inputting data into hiring software to see if there is a match. Once the data is entered, the software generates the names of potential candidates who retain the specified credentials. Recruiters then compile a list of candidates generated from the software.

From there, Recruiters perform a basic screening of the candidates in order to gather general information regarding their background and employment status. They also verify whether the candidate is interested in a particular position. If an interest is expressed, Recruiters then ensure that a candidate's credentials match the qualifications required by the client. They then assemble a list of viable candidates and submit this list to their Account Manager.

Account Managers review the list and select the potential candidates they want to interview. These interviews determine which candidates move forward. Account Managers make this decision on their own. Account Managers have the full authority to decide which candidates will actually be presented to a client. Account Managers are the ones responsible for recommending specific candidates to a client.

Recruiters do not have these responsibilities. Their duties simply consist of finding potential candidates that an Account Manager could recommend. Finding as many potential candidates as possible is the heart of their duties. These duties are basic in nature; they do not require special skill or advanced knowledge.

Plaintiffs all worked as Recruiters for Defendant. They had to perform all the production tasks described above. To complete these tasks, Plaintiffs and other Recruiters had to consistently work more than forty (40) hours each week. Working overtime was integral to their employment. There were production demands they had to meet each day. These demands resulted in Plaintiffs

and other Recruiters having to consistently work fifty (50) to sixty (60) hours a week. There were times that they worked even more. The requirements of their position left no other choice.

Defendant was well aware of the overtime hours worked by Plaintiffs and other Recruiters. However, Defendant did not pay its Recruiters for all of their hours worked. This was because Defendant misclassified its Recruiters as "exempt" salaried employees. There was no reason for Plaintiffs and other Recruiters to have been paid a salary. Defendant paid its Recruiters a salary in order to evade the overtime requirements.

## THE PARTIES

1. Plaintiff Emily Dietrick (hereinafter, "Dietrick") is an adult resident of Mechanicsville, Virginia.

2. Plaintiff Steven Connell (hereinafter, "Connell") is an adult resident of San Diego, California.

3. Plaintiff Brock Deel (hereinafter, "Deel") is an adult resident of Jacksonville, Florida.

4. Plaintiff Monica Jones (hereinafter, "Jones") is an adult resident of Raleigh, North Carolina.

5. Plaintiff Tyler Suite (hereinafter, "Suite") is an adult resident of Knightdale, North Carolina.

6. Defendant Apex Systems, LLC (hereinafter, "Defendant") is an incorporated for profit business registered in Virginia, among other states.

7. Defendant conducts business throughout the United States. Defendant has offices in Alabama, Arizona, California, Colorado, Connecticut, Florida, Georgia, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Mississippi, North

Carolina, Nebraska, New Jersey, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Virginia, Washington and Wisconsin.

8. Due to the nature of its business, Defendant is subject to the FLSA.

9. Due to the amount in revenues generated, Defendant is subject to the FLSA; Defendant's annual dollar volume of business exceeds five hundred thousand dollars ($500,000.00).

10. Defendant's business centers on providing staffing services on behalf of its clients. This entails meeting with clients in order to determine their staffing needs.

11. Defendant employs Recruiters to assist with its staffing services. Recruiters are responsible for searching online databases in order to identify and screen potential candidates. These searches are specific to the hiring needs of Defendant's clients. Recruiters are required to produce candidates who meet the specific qualifications.

12. From approximately August 2017 until March 2018, Plaintiff Dietrick was employed as a Recruiter. She worked out of Defendant's Richmond, Virginia office.

13. From approximately May 2015 to June 2017, Plaintiff Connell was employed as a Recruiter. He worked out of Defendant's San Diego, California office.

14. From approximately August 2014 until May 2018, Plaintiff Deel was employed as a Recruiter. He worked out of Defendant's Jacksonville, Florida office.

15. From approximately October 2015 until July 2016, Plaintiff Jones was employed as a Recruiter. She worked out of Defendant's Raleigh, North Carolina office.

16. From approximately March 2015 to May 2017, Plaintiff Suite was employed as a Recruiter. He worked out of Defendant's Raleigh, North Carolina office.

17. At all times relevant to this Complaint, Plaintiffs engaged in interstate commerce. This is based on the duties they performed as part of their employment with Defendant.

18. Plaintiffs worked for Defendant who, at all times throughout Plaintiffs' employment, fell within the definition of the term "employer" under the FLSA, 29 U.S.C. § 203(d).

19. At all times relevant, Plaintiffs and other Recruiters worked as non-exempt employees for Defendant.

20. The duties assigned to Plaintiffs and other Recruiters do not satisfy the duties tests contained within any of the exemptions specified in the FLSA.

21. At all times relevant to this Complaint, Defendant controlled the administration of its business and set employee schedules, including those of Plaintiffs and others similarly situated.

22. Defendant's agents were, individually and together, actively engaged in the management and direction of Plaintiffs and other similarly situated employees.

23. Defendant possessed and exercised the authority to determine the hours worked by Plaintiffs and other Recruiters.

24. Defendant had and exercised the authority to control Plaintiffs' tasks and the tasks of other similarly situated employees.

25. Defendant had and exercised the authority to change the course of Plaintiffs' and other Recruiters' duties.

26. Defendant made all decisions relating to Plaintiffs' and other similarly situated employees' rates and methods of pay.

27. Plaintiffs and members of the putative classes recognized Defendant's authority and obeyed Defendant's instructions.

## JURISDICTION AND VENUE

28. Original jurisdiction in this Honorable Court is expressly provided by FLSA, 29 U.S.C. § 207, *et seq*. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331, as this matter presents a federal question.

29. No reasons exist that would force this Honorable Court to decline jurisdiction; the state law claims (i) do not raise novel or complex issues of state law, (ii) do not substantially predominate the claims over which this Honorable Court has original jurisdiction and (iii) no circumstances exist that would constitute a compelling reason for declining jurisdiction, thereby satisfying 28 U.S.C. 1367(c).

30. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate; Defendant conducts sufficient business within the forum state as to constitute a submission to its laws. Defendant employs numerous residents of Maryland, which includes members of the proposed Collective.

## FACTUAL ALLEGATIONS FOR ALL CLAIMS

31. Defendant specializes in staffing information technology ("IT") positions. This primarily consists of finding technical employees to work for its clients.

32. Defendant's clients range from large corporations to local businesses. Defendant is responsible for assisting clients with their specific staffing needs.

33. To assist its clients, Defendant maintains offices nationwide. Defendant employs numerous individuals who perform various roles.

34. Plaintiffs and other similarly situated employees hold or held the title Recruiter. Their role was to find potential job candidates by matching a candidate's credentials with the job qualifications set by Defendant's clients. They had to find candidates specific to a client's exact hiring needs. They were required to follow specific protocols in order to fulfill these needs. It was demanded that they follow these protocols precisely. There were guidelines attributable to all of their assigned tasks.

35. Plaintiffs and other Recruiters got their assignments from Defendant's Account Managers. Account Managers were the persons responsible for distributing Plaintiffs' and other Recruiters' work. They oversaw all of the work that Plaintiffs and other Recruiters completed.

36. Account Managers were the persons that worked directly with Defendant's clients. Account Managers would gather all of the information specific to the position that a client was trying to fill. Clients would advise Account Managers of the credentials and qualifications required of a potential candidate. Account Managers would in turn provide this information to Defendant's Recruiters.

37. From there, Plaintiffs and other Recruiters would use this information to search for potential candidates. They would input information into online databases in order to search for candidates who had the qualifications and credentials required of a particular position. "Bullhorn," "LinkedIn" and "Monster" were databases typically used.

38. These databases would generate a list of potential candidates. Plaintiffs and other Recruiters would then check to make sure that these candidates met the minimum requirements set by a client. If these requirements were satisfied, Plaintiffs and other Recruiters would perform a general screening. This consisted of contacting potential candidates by phone and email to discuss the open position. They would confirm that the candidate met all of the requirements demanded by the client. They would also provide the potential candidate with more information regarding the open position. This information was basic in nature.

39. Relaying information was the crux of their duties. Recruiters simply acted as liaisons. Defendant's client would tell Defendant's Account Managers of the credentials required of a candidate in order to be considered for a position. Account Managers would then inform Recruiters of these requirements. Once Recruiters found candidates with the necessary requirements, they would then tell the candidate about the position. This was all that was required of Recruiters during the screening process.

40. Following screening, Recruiters would then produce a list of candidates who met all of the requirements to Defendant's Account Managers. Account Managers would then

interview the candidates. Account Managers were the persons who ultimately selected which candidates would be recommended to Defendant's clients for hire. They made all decisions in regard to which candidates would actually be presented to a client.

41. Plaintiffs and other Recruiters had no say in these decisions. They had no contact with Defendant's clients. Account Managers were the persons designated to communicate with clients. Plaintiffs and other Recruiters were merely responsible for screening potential candidates. Matching credentials with a client's requirements was their primary task.

42. Plaintiffs and other Recruiters could not negotiate any of the terms of a potential candidate's employment. They were unable to negotiate the candidate's pay, schedule or any benefits the candidate could potentially receive. Plaintiffs and other Recruiters had no incentive to discuss these topics with candidates.

43. Plaintiffs and other Recruiters rarely, if ever, had any contact with candidates once they were actually hired. The hiring of a candidate typically ceased all communications between the candidate and a Recruiter.

44. Recruiters rarely, if ever, spoke to the candidates again once their names were given to an Account Manager for consideration. Turning over the candidates' names was the last thing a Recruiter had to do to complete their assignments.

45. Defendant maintained complete control over Plaintiffs' and other Recruiters' assignments. This includes the types of candidates they had to find, the number of candidates they had to contact to fill a position and the manner in which they screened candidates for each position.

46. Plaintiffs and other Recruiters were not involved with developing any policies or procedures in regard to Defendant's recruiting process. Their opinions were never sought in regard to this process. Recruiters were always required to follow the processes implemented by Defendant. They lacked independent judgment altogether.

47. Plaintiffs and other Recruiters were not permitted to create or use their own recruiting strategies. They were only permitted to screen candidates according to Defendant's set guidelines. It was required that they follow these guidelines precisely. They had no authority to act on their own.

48. Plaintiffs and other Recruiters satisfied the requirements of their position and adequately performed their duties to benefit Defendant and its clients.

49. Plaintiffs and other Recruiters performed their duties to the extent required by Defendant.

50. Plaintiffs and other Recruiters all worked the same schedules. They were typically scheduled to work Monday through Friday. They were required to work from 7:30 a.m. until at least 5:00 p.m. However, they consistently worked more.

51. Due to Defendant's productivity demands, Plaintiffs and other Recruiters regularly worked well past 5:00 p.m. They consistently stayed at work until 7:00 p.m. or later. Working overtime was integral to Plaintiffs' and other Recruiters' employment. It was routine for them to work fifty (50) or more hours a week.

52. Regardless of how many hours they worked, Defendant required its Recruiters to fill out time-sheets reflecting that they worked exactly eight (8) hours each day. However, Defendant knew that Plaintiffs and other Recruiters worked more than eight (8) hours a day. Defendant required its Recruiters to inaccurately report their time worked. This was done to create the appearance that Plaintiffs and other Recruiters did not work over forty (40) hours a week, despite the fact they regularly worked overtime.

53. Plaintiffs and other Recruiters were not compensated for working overtime. They were all paid in the same manner. Their compensation package consisted of a base salary plus commission.

54. Their base salary was anywhere between thirty thousand ($30,000.00) and forty-two thousand ($42,000.00) dollars per year. The additional sums they could potentially receive in commissions were generally based on a percentage of screened candidates who were actually hired by a client.

55. For the duration of her employment, Plaintiff Dietrick's base salary was thirty-two thousand ($32,000.00) plus commissions. At no point during her employment did her commission payments exceed fifty percent (50%) of her regular salary.

56. For the duration of his employment, Plaintiff Connell's base salary was forty-two thousand ($42,000.00) plus commissions. At no point during his employment did his commission payments exceed fifty percent (50%) of his regular salary.

57. For the duration of his employment, Plaintiff Deel's base salary was thirty-three thousand ($33,000.00) plus commissions. At no point during his employment did his commission payments exceed fifty percent (50%) of his regular salary.

58. Plaintiff Jones was paid a base salary of thirty-two thousand ($32,000.00) plus commissions. During her tenure, Jones' commission payments never exceeded fifty percent (50%) of her salary.

59. For the duration of his employment, Plaintiff Suite's base salary was thirty thousand ($30,000.00) plus commissions. At no point during his employment did his commission payments exceed fifty percent (50%) of his regular salary.

60. Plaintiffs and other Recruiters should have also received overtime payments. They consistently worked over (40) hours a week. Therefore, they should have been paid at a rate of "time and a half" their regular rate of pay for all overtime hours worked.

61. There is no bona fide dispute that Plaintiffs and other Recruiters are owed overtime wages.

62. The duties performed by Plaintiffs and other similarly situated Recruiters did not implicate any exemptions contained within the FLSA.

63. Defendant was well aware of the overtime hours worked by Plaintiffs and other Recruiters.

64. Defendant permitted its Recruiters to work these overtime hours.

65. By requiring Plaintiffs and other Recruiters to underreport their hours, Defendant was able to mask its unlawful payment scheme.

66. Defendant's scheme was implemented in bad faith.

67. Consequently, on behalf of themselves and all those similarly situated, Plaintiffs seek the wages to which they are entitled and other available relief through this Complaint.

## FLSA COLLECTIVE ACTION ALLEGATIONS

68. Plaintiffs and other similarly situated employees work or worked as Recruiters for Defendant.

69. The FLSA requires employers to compensate non-exempt employees such as Plaintiffs and others similarly situated with overtime wages for all hours worked over forty (40) within a workweek.

70. Defendant knew or should have known that Plaintiffs and those similarly situated were entitled to overtime pay for all hours worked over forty (40) each week.

71. Defendant suffered or permitted Plaintiffs and other Recruiters to work more than forty (40) hours per week.

72. Pursuant to the FLSA, Plaintiffs commence this collective action against Defendant on behalf of themselves and those similarly situated.

73. Plaintiffs demand damages reflecting an overtime rate of not less than one and a half (1.5) times their regular rate of pay for all hours worked over forty (40) in any workweek

within the applicable statute of limitations. Plaintiffs make these same demands on behalf of all members of the putative class.

74. Plaintiffs consent to be party plaintiffs in this matter. Plaintiffs' consent forms are attached to this Complaint as Exhibits 1 - 5.

75. It is likely that other individuals will join Plaintiffs during the litigation of this matter and file written consents to "opt in" to this collective action.

76. There are numerous similarly situated current and former employees of Defendant that have been harmed by Defendant's common scheme to underpay its employees and violate the FLSA.

77. These similarly situated persons are known to Defendant and are readily identifiable through Defendant's records.

78. Many of these similarly situated employees would benefit from the issuance of court-supervised notice, granting them the opportunity to join this lawsuit.

79. Upon information and belief, others will choose to join Plaintiffs in this action against Defendant and opt in to this lawsuit to recover unpaid wages and other available relief.

## CAUSES OF ACTION AND VIOLATIONS OF LAW

### *Count I. Violation of the FLSA: Failure to Pay Overtime Wages*

80. Plaintiffs hereby fully incorporate in this Count all allegations contained within Plaintiffs' Complaint.

81. Plaintiffs are entitled to overtime under 29 U.S.C. § 207(a), which provides that employers must compensate their employees for hours worked in excess of forty (40) in a workweek at a rate of not less than one and one-half (1.5) times the regular rate at which they are employed.

82. As described above, Plaintiffs have not received from Defendant compensation reflecting the prescribed overtime wage rate for hours worked in excess of forty (40) in a week; Defendant failed to compensate Plaintiffs for these additional hours.

83. Defendant willfully and intentionally failed to compensate Plaintiffs for the overtime hours they worked by advising Plaintiffs to underreport their hours.

84. There is no *bona fide* dispute that Plaintiffs are owed overtime wages for the work they performed for Defendant.

85. Under the FLSA, Plaintiffs are entitled to additional wages from Defendant to compensate them for hours worked in a workweek in excess of forty (40) at a rate of one and one-half (1.5) times their regular hourly wage rate.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and others similarly situated, pray for the following relief:

a) Designation of this action as a collective action on behalf of Plaintiffs and those similarly situated;

b) Designation of this action as a class action on behalf of Plaintiffs and all members of the proposed state classes;

c) A finding that Defendant's classification of Plaintiffs and similarly situated employees as exempt was done in error;

d) Judgment against Defendant for its failure to pay Plaintiffs and those similarly situated in accordance with the standards set forth by the FLSA;

e) An award against Defendant for the amount of unpaid overtime wages owed, calculated at a rate that is not less than one and a half (1.5) times Plaintiffs' regular hourly rate for all overtime hours worked, to Plaintiffs and those similarly situated;

f) An award of liquidated damages equal to the total amounts of unpaid wages owed to Plaintiffs and those similarly situated;

g) An award of reasonable attorneys' fees and all costs, plus interest, to be satisfied in full by Defendant;

h) Leave to add additional plaintiffs, opt-in or party, through the filing of consent forms; and

i) All further relief deemed just and equitable by this Honorable Court.

**REQUEST FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request that a jury of their peers hear and decide all possible claims brought on behalf of Plaintiffs and those similarly situated.

Respectfully submitted,

*/s/ Benjamin L. Davis, III*
Benjamin L. Davis, III (29774)
bdavis@nicholllaw.com
The Law Offices of Peter T. Nicholl
36 South Charles Street
Suite 1700
Baltimore, Maryland 21201
Phone No.: (410) 244-7005
Fax No.:    (410) 244-8454

*Attorney for Plaintiffs*