**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

STEVEN CONNELL,                                    )
*individually and on behalf of all others*         )
*similarly situated*,                              )
                                                   )
       Plaintiff,                        )
                                                   )    Civil Action No. 3:19-cv-00299
   v.                                       )
                                                   )
APEX SYSTEMS, LLC,                                 )
                                                   )
       Defendant.                        )

**APEX SYSTEMS, LLC'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
AND COURT-AUTHORIZED NOTICE**

Pursuant to Rule 7 of the Local Rules of Court for the Eastern District of Virginia, Defendant Apex Systems, LLC, ("Apex" or "Defendant"), by counsel, submits the following as its Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice (Dkt. 45).

## I.    INTRODUCTION

Plaintiffs filed a Motion for Conditional Certification and Court-Authorized Notice (the "Motion"), as well as an accompanying memorandum (the "Motion Memorandum"), seeking conditional certification under 29 U.S.C. § 216(b) of the Fair Labor Standards Act of 1938 (the "FLSA") of a putative collective that would include each individual who, at any time during the "applicable statutory period," was employed by Apex as a "Technical Recruiter."  In the Motion Memorandum and the Complaint, Plaintiffs allege that Apex failed to pay overtime to its "Recruiters" nationwide in violation of the FLSA.  However, Plaintiffs have wholly failed to define

the putative collective, and Apex employs individuals in various junior or entry-level positions containing the word "Recruiter" and does not even have a position titled "Technical Recruiter."

Further, despite their lack of personal, first-hand knowledge regarding the varying job titles, job duties, and schedule expectations for employees in candidate-recruiting roles from office to office, Plaintiffs seek to certify a nationwide collective action covering more than a thousand employees, working under hundreds of different managers, in 78 individual branch offices spread throughout 38 states, based solely on their identical, self-serving, conclusory, and cookie-cutter declarations that these individuals are somehow "similar." Indeed, the duties among "Technical Recruiters" at Apex are so varied that some have direct candidate-facing roles, some staff on national corporate accounts, some have responsibilities as client-facing sales trainees, and many exercise considerable independent judgment as to the candidates that Apex submits to its clients for hiring. Finally, 54.2% of the employees that Plaintiffs seek to include in the vaguely-defined putative collective signed binding arbitration agreements, thus precluding them from opting-in to this action. Plaintiffs' allegations certainly do not support a nationwide collective action against Apex. As discussed below, the Motion for Conditional Certification should be denied.

## II.   **STATEMENT OF FACTS**

Apex, a division of ASGN Incorporated (formerly called On Assignment, Inc.), has provided technical and professional staffing services for employers across the United States since 1995. (*See* Second Declaration of Michele McCauley attached as Exhibit 1, ¶ 4 ["Ex. 1" hereafter]). Apex specializes in providing personnel for temporary, temporary-to-permanent duty, and direct hire assignments for its corporate clients in a wide variety of industries, but with a particular focus on information systems, information technology, and related technical applications. *Id*. Apex employs individuals in various internal positions that involve responsibilities relating to the recruiting of job candidates seeking those temporary or longer-term

2

placements at Apex's clients' worksites. *Id*. ¶ 5.  These positions range from junior- or entry-level recruiting roles to highly skilled, senior recruiting positions. *Id*.

Apex does not employ any employees with the precise job title, "Technical Recruiter," as Plaintiffs incorrectly allege. *Id*. ¶ 6.  Rather, Apex uses the generic term "technical recruiter" internally to informally refer to its entry- or junior-level recruiting positions. *Id*.  These positions include those with jobs titled Recruiter ST (ST meaning Sales Trainee), Hub Recruiter, and Recruiter (collectively referred to hereafter as "Technical Recruiters"). *Id*.  Other Apex positions that contain the word "Recruiter" include highly specialized and advanced Professional Recruiter and Senior Professional Recruiter positions. *Id*. None of the Plaintiffs named in this case held either of these two more senior recruiting positions, and the alleged duties described in the Complaint do not correspond with the duties of these positions. *Id*.

Again, purported "Technical Recruiters'" job duties and expectations vary widely based on their actual position title – whether Recruiter ST, Hub Recruiter, or Recruiter. *Id*. ¶ 7.  In addition, Apex employs Technical Recruiters in 78 branch offices across 38 different states.  *Id*. ¶ 8.  Employees in each branch office are subject to individual local management and management practices, unique client needs and preferences, and varying scheduling expectations. *Id*.

As a result of these localized variations, Technical Recruiters, even those with the same position title, may have significantly different job duties and schedules across different offices. *Id*. ¶ 9.  Depending on client needs and staffing levels, Technical Recruiters in one branch office may consistently work more hours in a workweek than those in an office with different client needs. *Id*. ¶ 10. By way of a specific example, during the period from February 2018 through the present, a Recruiter in Apex's Duluth, Minnesota branch office consistently worked overtime hours of up to 9.5 hours per workweek (for which the employee was paid overtime pay), whereas during roughly

the same period, an employee with the same title of Recruiter in Apex's Boston, Massachusetts branch office worked almost no overtime, working more than 40 hours in a single workweek on only two occasions, and such overtime was minimal (no more than two hours per workweek, for which the employee was paid overtime pay). *Id*.

Additionally, depending on local management practices and client preferences, some Technical Recruiters may be tasked with higher-level decision making, with less oversight, than their peers with the same job title in a different office. *Id* ¶ 11.  For example, some Technical Recruiters have significant input and exercise independent judgment in client hiring decisions. *Id*. Further, and in addition to variations between branch offices, Technical Recruiters' own individual schedules will fluctuate from workweek to workweek, depending on Apex's clients' needs at any given time. *Id*. ¶ 12.

Technical Recruiters are also subject to different practices for calculating overtime compensation depending on where they work. *Id*. ¶ 13.  Where permissible by state law, Technical Recruiters are paid as salaried non-exempt employees using the Department of Labor-approved fluctuating workweek method of calculating overtime.  *Id*. ¶ 14.  This means that they are paid a guaranteed minimum salary each workweek, even if they work less than forty hours.  *Id*.  If they work more than forty hours in a workweek, then they are paid an additional half-time premium calculated by dividing their total pay for the week, by the number of hours worked that week.  *Id*., ¶¶ 15-16, Ex. A (hereinafter referred to as the "Recruiter Premium Pay Policy").

As noted in Apex's Recruiter Premium Pay Policy, certain Technical Recruiters work in states that do not allow the fluctuating workweek method of calculating overtime and, as such, are paid as salaried non-exempt employees. *Id*. ¶ 15, Ex. A.  These Technical Recruiters are paid their regular weekly base salary, plus overtime at a rate of 1.5 times the hourly equivalent of their salary

rate for all hours worked over forty in a single workweek, as well as any additional overtime owed in accordance with applicable state or local laws.  *Id*.  As these varied policies and procedures illustrate, Apex goes to great lengths to ensure that its Technical Recruiters across the country are paid properly and in accordance with all applicable federal, state, and local laws. *Id.* ¶ 16.

Finally, approximately 55% of the Technical Recruiters that Plaintiffs purport to represent in the conditional collective signed arbitration agreements in which they specifically consented to the exclusive forum of arbitration for the resolution of their claims, including FLSA claims, and which included a class or collective waiver.  For all of these reasons, there is no factual or legal support for even conditional certification of a collective comprised of so-called Technical Recruiters, and the Motion for Conditional Certification should be denied.

## III.   LEGAL STANDARD FOR CERTIFICATION OF COLLECTIVE ACTION

Courts in the Fourth Circuit have adopted a "two-stage approach" to determine whether certification of an FLSA collective or class is warranted. *Purdham v. Fairfax Cty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. 2009). The "notice stage" comes first, and if the court makes the preliminary determination that notice should be given to potential collective members, it "conditionally certifies" that collective.  *Id*.  Notice is then provided to allow collective members to "opt-in." *Id*.  While the "notice stage" is the first in this two-step process, "[w]hen sufficient evidence in the record…makes it clear that notice is not appropriate…a court can collapse the two stages of the analysis and deny certification outright." *Id*. (citing *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1273-74 (M.D. Ala. 2004).  "A court's discretion to facilitate notice is not unfettered." *Id*. at 547.  Indeed, courts should not exercise their discretion to facilitate notice "unless '[t]he facts and the circumstances of the case illustrate' that a class of 'similarly situated' aggrieved employees exists." *Id*. at 547-48 (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

"Before this court can order issuance of a notice, then, plaintiffs must demonstrate that there are others similarly situated [to them]. Mere allegations will not suffice; some _factual evidence_ is necessary." _Bernard v. Household Int'l, Inc._, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) (emphasis added) (denying plaintiffs request for notice when they did not provide evidence sufficient "to support allegations that defendant has a company-wide policy resulting in potential FLSA violations"); _Brown v. White's Ferry, Inc._, No. CIV.A DKC11-1683, 2011 WL 5151394, at *3 (D. Md. Oct. 27, 2011).   Here, Plaintiffs have failed to meet their burden, through factual evidence, that they are similarly situated to the other purported "Technical Recruiters" nationwide that they propose to represent. As such, the Motion for Conditional Certification should be denied.

## IV.   UNDER ANY STANDARD, PLAINTIFFS AND THE PUTIVAVE COLLECTIVE MEMBERS ARE NOT "SIMILARLY SITUATED"

Plaintiffs bear the burden of establishing that they and the putative collective members are "similarly situated."   _Purdham_, 629 F. Supp. 2d at 5458; _Kuznyetsov v. West Penn Allegheny Health Sys. Inc._, 2011 WL 6372852, at *4 (W.D. Pa. Dec. 20, 2011) ("At both the first and second stages, the burden is on the Plaintiffs to show that other employees are similarly situated").   Here, Plaintiffs cannot make the required showing because the record evidence reflects that: (1) Plaintiffs have failed to sufficiently define the collective at all because Apex has several positions that fall under the purported "Technical Recruiter" umbrella; (2) individualized FLSA coverage assessments are required for each putative collective member and such assessments make a collective action untenable; and (3) no common policy exists at Apex that violated the FLSA.

### A.   Plaintiffs fail to sufficiently define the collective, and therefore, fail to show other employees are similarly situated.

Plaintiffs seek to certify a nationwide collective of all "Technical Recruiters" employed by Apex during the last three years preceding the filing of the Complaint, even though no such job

title exists at Apex[1]. Ex. 1, ¶ 6.  Indeed, Apex does not employ any employees with the precise job title, "Technical Recruiter," as Plaintiffs inconsistently allege in their pleadings.[2] *Id.*  Rather, Apex uses the term "technical recruiter" to informally refer to several different junior-level recruiting positions. Ex. 1, ¶ 6.   As stated above, these positions include those with jobs titled Recruiter ST (Sales Trainee), Hub Recruiter, and Recruiter. *Id.*  Apex also employs high-level decision makers that contain the word "recruiter" in their job titles, such as Professional Recruiters and Senior Professional Recruiters. *Id.*  These higher-level recruiters (as well as other more junior Technical Recruiters) exercise more independent judgment and discretion than, for example, the named plaintiffs in this case did during their tenure at Apex. Plaintiffs have not adequately provided a consistent description of the types of positions it seeks to include in this action, so as to give this Court even a modest starting point to ascertain the putative collective members. As such, they have not sufficiently defined the class and; therefore, fail the "similarly situated" standard in even the most lenient sense.

For example, in *Yerger v. Liberty Mut. Group. Inc.*, the court denied the plaintiff's bid to certify a nationwide class of all "field auditors" employed by defendant because the complexity and overall nature of the field auditors' work varied based on factors such as the state in which the auditors worked, and the size and sophistication of the clients they serviced. No. 5:11-CV-238-D, 2011 WL 5593151, at *2 (E.D.N.C. Nov. 15, 2011).  The *Yerger* plaintiff offered six declarations[3]

---

[1] Apex also disputes that a three-year lookback is appropriate in any event as there is absolutely no basis to assert that Apex "willfully" violated the statute.  If the Court decides to certify a collective, Apex submits that only a two-year lookback period is appropriate.

[2] The Complaint uses the term "Recruiter" whereas the Plaintiffs' Memorandum in Support of Conditional Certification uses the term "Technical Recruiter" when referring to the putative class. *Compare* Dkt. 1 at ¶ 11 *with* Dkt. 46 at 6.

[3] Like the Plaintiffs here, each declaration essentially recited the same language stating that the defendant expected field auditors to work more than forty hours per week and did not pay overtime compensation for such work, "suggesting that the declarants signed them without significant reflection." *Yerger*, 2011 WL 5593151, at *2.

where "all but one of the declarants worked for [defendant] in the southeastern United States (the other worked in Illinois), and none of the declarants attained a higher-level field auditory job grade." *Id.* at *5. Further, the plaintiff presented no "evidence whatsoever regarding auditors in other grades, in other titles, with other supervisors," or in other regions under the "field auditors" umbrella. *Id.*

Similarly, here, Plaintiffs offer only their own nearly identical self-serving declarations, all of which make the following conclusory allegation: "[o]ther Recruiters and I all performed the same tasks." *See* ECF No. 46-3 (Connell Decl. ¶ 5, Suite Decl. ¶ 5). Further, Plaintiffs here present no evidence whatsoever to distinguish the varying Technical Recruiter grades or titles (such as to distinguish Recruiter STs, Hub Recruiters, and Recruiters) for this Court to ascertain which class of recruiters they want certified. Compare with Ex. 1, ¶ 7 (describing the differences in the positions). Additionally, all but one of the declarants worked for Apex in the South Atlantic Region of the United States (Virginia and North Carolina) whereas the other worked in California. ECF No. 46-3 (Dietrick Decl. ¶ 2; Suite Decl. ¶ 2; Connell Decl. ¶2). Yet, Apex's five categories of employees containing "recruiter" in the title are spread throughout Apex's 78 branch offices across 38 different states. Ex. 1, ¶ 8.

As such, Plaintiffs have failed to sufficiently define the putative collective they wish to certify, and this Court should refuse to grant conditional certification as a matter of law. *See Yerger*, 2011 WL 5593151, at *6; *See also Purdham*, 629 F. Supp. 2d 544 (holding that plaintiffs failed to sufficiently define collective, where employees were employed "in various capacities" and plaintiffs did not sufficiently define one group of employees by title or class to certify).

**B.    The putative class is not similarly situated, because individual assessments of each putative collective member's job duties, hours worked, pay structure, and individual local management practices will be necessary to determine alleged liability.**

Again, Apex's employees in the positions that are informally referred to as Technical Recruiters are spread throughout 78 branch offices in 38 states, and they also are subject to individual local management and management practices, unique client needs and preferences, and varying scheduling expectations. Ex. 1, ¶ 8. Therefore, even in the most lenient sense, they are far from "similarly situated." *See Purdham*, 629 F. Supp. 2d at 552 (holding that "conditional certification is not appropriate based on the probable necessity of individualized FLSA determinations for each putative class member"); *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682 (D. Md. 2010) (holding conditional certification is not proper where disparate employment circumstances for putative class members varies from "stand to stand"[4] and from "manager to manager"); *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (finding conditional certification inappropriate where adjudication of a collective action would have required factual inquires involving different managers at different geographic locations throughout the country, and where the court held a finding of liability at one location would not necessarily lead to a finding of liability at another location).   Because there are so many individualized inquiries that must be answered in order to assess the claims of every putative collective member, collective treatment is not appropriate here.

Similar to the case here, in *Syrja*, the court found that individual FLSA coverage assessments were required for each branch office to determine which of the putative collective members worked over forty hours per week and thus denied certification outright at the notice stage. 756 F. Supp. 2d at 688.   There, the plaintiff requested the court collectively certify and

---

[4] The defendant employer in this case referred to each respective office as a "stand."

9

provide notice to a group of "field interviewers" that were employed to collect demographic data. *Id*. at 684. The "quantity and nature of the work assignments among [the] field interviewers var[ied] considerably" *Id*. These variations depended "upon the geography of the [office], the resulting time travel required, the preferences of [each office's] managers, and the skill and experience levels of the field interviewers, among other things." *Id*. Therefore, the court reasoned that "the adjudication of multiple claims in this case would require the parties, the Court, and perhaps eventually a jury, to engage in an unimageable assortment of individualized factual inquires" and; therefore, denied conditional certification at the initial notice stage. *Id*. at 688.

Similarly, here, the quantity and nature of the work assignments among Apex's Technical Recruiters vary considerably. Ex. 1, ¶ 7. These variations also depend upon the office which they work, the preferences of each office's managers, the Technical Recruiter's skill and experience, and the size, sophistication and preferences of the client(s) they service. *See Id*. ¶ 8. As a result of these localized variations, Technical Recruiters, even those with the same position title, may have significantly different job duties and schedules across different offices. *Id*. ¶ 9. Also depending on the staffing levels on each individual client, Technical Recruiters in one branch may consistently work more hours in a workweek than those in an office with different client needs. *Id*. By way of example only, an employee with the title Recruiter in Apex's Duluth, Minnesota branch office consistently worked overtime hours of up to 9.5 hours per workweek (for which the employee was paid overtime pay), whereas during roughly the same period, an employee with the same title of Recruiter in Apex's Boston, Massachusetts branch office worked overtime on only two occasions. *Id*. Further, the Boston employee's overtime was minimal, (never over two hours per workweek, for which the employee was paid overtime pay). *Id*.

Also depending on local management practices and client preferences, some Technical Recruiters are tasked with higher-level decision making, with less oversight than their peers in a different office. *Id*. ¶ 10. Further, and in addition to the variations between branch offices, some Technical Recruiters' individual schedules fluctuate from workweek to workweek depending on Apex's clients' needs at any given time. *See Id*. ¶ 11. Therefore, given the hundreds, if not thousands, of individualized FLSA assessments necessary for each putative collective member, conditional certification and notice should be denied, as it would unduly burden this Court, the parties, and potentially, a jury.

      **C.**     **The putative class is not similarly situated because no single, uniform unlawful policy exists.**

Conditional certification is inappropriate where plaintiffs fail to show the existence of a common plan or policy that violates the FLSA. *Purdham*, 629 F. Supp. 2d at 550-51 (denying conditional certification where plaintiffs failed to show existence of a common plan or policy that violated the FLSA). Here, Plaintiffs are unable to make even a modest factual showing that they or any other Technical Recruiters were victims of a *single* policy or plan that violated the law and have thus failed to show they are similarly situated to employees outside their individual offices.[5]

For example, in *Bernard v. Household Int'l, Inc*., the court denied the plaintiffs' request for conditional certification when they did not provide evidence sufficient "to support allegations that the defendant ha[d] a company-wide policy resulting in potential FLSA violations." 231 F. Supp. 2d 433, 435 (E.D. Va. 2002). There, the defendant maintained twenty different offices in cities located throughout fifteen states. *Id*. at 434. The plaintiffs, however, only worked in the defendant's Chesapeake, Virginia and Virginia Beach, Virginia offices. *Id*. The court refused to certify a class of employees in all of the defendant's offices even though the plaintiffs' pleadings

---

[5] Plaintiffs acknowledge that they are required to make this showing. *See* Dkt. 46 at 4.

and supporting declarations alleged "the same general policies, practices and procedures" were practiced company-wide. *Id*. at 436.  Specifically, the court reasoned:

> There are no declarations from employees in offices other than Chesapeake and Virginia Beach.  There are not even any specific allegations regarding practices in other offices—no names of employees or supervisors, and no indication that the problems alleged through -first-hand knowledge in the two Virginia offices existed elsewhere. Without more, this court cannot find that the "similarly situated" criteria is met as to overtime compensation practices for offices outside of Virginia.

*Id*.

Similarly, Plaintiffs here attempt to certify a nation-wide class of Technical Recruiters located in 38 different states, although they only offer declarations regarding the compensation practices of 3 former employees located in 3 different offices, in 3 states.[6]  In fact, declarants Ms. Dietrick, Mr. Suite, and Mr. Connell, all indicate in their declarations that they only have first-hand knowledge of the employment practices in their <u>own</u> respective offices. ECF No. 46-3 (Dietrick Decl. ¶¶ 4-17; Suite Decl. ¶¶ 4-17; Connell Decl. ¶¶ 4-17).  The only allegations that they make in their nearly identical, self-serving affidavits to allege that unlawful employment practices occurred company-wide are, "[a]ll of Defendant's Recruiters were subject to this practice…[a]lthough the nature and quantity of these goals would regularly change, these goals applied to all recruiters."  *Id*. ¶¶ 18-20.

Further, Apex does not have a *single* policy that applies to Technical Recruiters regarding compensation.  Ex. 1, ¶¶ 13-14. For example, where permissible by state law, Apex pays Technical Recruiters as salaried non-exempt employees using the DOL-approved fluctuating workweek method of calculating overtime.  *Id*. ¶ 13-15, Ex. A.  Using this method, the Technical Recruiters are paid a guaranteed minimum salary each week, even when they work less than forty hours. *Id*.

---

[6] Additionally, Plaintiffs provide no specific names of employees or supervisors in offices outside of California, North Carolina, and Virginia. *See generally* Dkt. 46-3.

12

If they work more than forty hours in a workweek, then they are paid an additional half-time premium calculated by dividing their total pay for the week, by the number of hours worked that week. *Id*. Alternatively, certain Technical Recruiters working in states that do not allow the s fluctuating workweek method (such as is the case for one of the three declarants identified above) are still paid as salaried non-exempt employees. *Id*. ¶ 14. However, these Technical Recruiters are paid at a rate 1.5 times the hourly equivalent of their salary rate for all hours worked over forty in a single workweek, as well as any additional overtime owed in accordance with applicable state or local laws. *Id*. Like the employees in *Bernard*, Plaintiffs here fail to show they are similarly situated to Technical Recruiters in the 78 other Apex offices of which they have no first-hand knowledge. *See* 231 F. Supp. 2d at 436. Accordingly, Plaintiffs fail to meet their burden of showing they are similarly situated to employees outside of their own former Apex offices, and therefore, they should be denied conditional certification and court-approved notice.[7]

## V.   EMPLOYEES THAT EXECUTED ARBITRATION AGREEMENTS SHOULD BE EXCLUDED FROM THE PUTATIVE CLASS

### A.   The Only Federal Appellate Court to Address This Issue Held That Notice Should Not Be Sent to Individuals with Binding Arbitration Agreements—A Holding This Court Should Adopt.

Plaintiffs' request for conditional certification suffers from another fundamentally fatal flaw: most of the people they seek to include in the collective are subject to arbitration agreements that preclude them from "opting in" to this action. Those persons should therefore not be included in the collective and should not receive notice of this action. *See In re JPMorgan Chase & Company*, 916 F.3d 494, 501 (5th Cir. 2019). In anticipation of this argument, Plaintiffs insist that

---

[7] As discussed in detail in Section V, *infra*, the putative collective members are also not similarly situated, because approximately 55% of putative collective members are subject to enforceable Dispute Resolution Agreements containing arbitration clauses that preclude them from participating in this action.

determining whether potential members have entered into such agreements is "an improper merits-based argument" that is inappropriate at the conditional certification stage.   ECF No. 46 at 12. This argument, derived from a string cite of relatively old, out-of-jurisdiction district court cases, is based on a misreading of both the FLSA and controlling Supreme Court authority.

Under *Hoffmann-La Roche Inc. v. Sperling*, which Plaintiffs rely upon heavily, district courts "have discretion to facilitate[e] notice to potential plaintiffs" in a collective action. 493 U.S. 165, 169 (1989).   Missing from *Hoffmann-La Roche*, however, is any discussion about whether individuals subject to arbitration agreements (who therefore <u>cannot</u> join the collective) count as "potential plaintiffs."   This lack of clarity "has produced conflicting results from district courts" (including those relied upon by Plaintiffs) regarding whether notice should be sent to such individuals.   *See In re JPMorgan Chase*, 916 F.3d at 500 (5th Cir. 2019).

Just a few months ago, the Fifth Circuit—in *In re JPMorgan Chase*—became the first (and *only*) federal circuit court to weigh in on this issue.   There, the court held that the district court *does not* have discretion to issue notice of a pending FLSA collective action to individuals who, the preponderance of evidence showed, had signed binding arbitration agreements with class/collective action waivers.   *See Id.* at 502–503.   The court noted that, under *Hoffman-La Roche*, the district court's discretion to issue notice is not "unbridled," and is limited to those who are not subject to arbitration agreements:

> *Hoffman-La Roche* confines district courts' notice-sending authority to notifying potential plaintiffs . . . [T]he purpose of giving discretion to facilitate notice is because of the need for "efficient resolution in one proceeding of common issues." *Id.* at 170, 172–73, 110 S. Ct. 482.   Notifying Arbitration Employees reaches into disputes beyond the "one proceeding."   And alerting those who cannot ultimately participate in the collective "merely stirs up litigation," which is what *Hoffman-La Roche* flatly proscribes. *Id.* at 174, 110 S. Ct. 482.

*In re JPMorgan Chase*, 916 F.3d at 501–502 (footnotes omitted) (emphasis added).

In response to the argument that notice should be provided regardless of whether the recipient can join the collective, the court stated that "[n]either FLSA's text nor *Hoffmann-La Roche* offers any support whatsoever for that notion." *Id.* at 503. "*Hoffmann-La Roche*, for example, states only that district courts have the discretion to facilitate notice—not that they must." *Id.* at 503 n.19. The court also stated that this "notice of rights" theory (the same one touted by the Plaintiffs in this case) "looks a lot like 'solicitation of claims,' which *Hoffmann-La Roche* forbids, instead of permissibly facilitating notice 'for case management purposes.'" *Id.* The court further explained that *Hoffmann-La Roche* grounds the discretion given to district courts to facilitate "joining multiple parties" so it can "ascertain[] the contours of the action at the outset." *Id.* at 502 n.16. In other words, the Supreme Court intended only for court-authorized notice to "facilitate the current lawsuit"—not to "affect individual arbitrations that might involve similar claims." *Id.* Ultimately, the court held that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action." *Id.* at 501. Put another way, "[w]here the preponderance of the evidence shows that the employee has entered into a valid arbitration agreement, it is error for a district court to order notice to be sent to that employee as part of any sort of certification." *Id.* at 503.

The Fifth Circuit's decision in *In re JPMorgan Chase* should be given substantial weight by this Court. As mentioned above, it is the only decision from a federal appellate court on this question. The authorities relied upon by Plaintiffs in their memorandum (and that are likely to be relied upon in any reply) are district court decisions that misunderstand the requirements of the FLSA and the reach of *Hoffmann-La Roche*. In order to remedy this confusion, the Fifth Circuit employed its "supervisory authority" through a rarely-used procedural tool known as "supervisory

mandamus" to—in its words— "correct errant caselaw." *See Id.* at 504–505.  Given the recency

of this decision, its reach is not yet known.  However, at least one court outside of the Fifth

Circuit—the Northern District of Illinois—recently agreed with the Fifth Circuit's reasoning and

denied collective certification, stating that this approach "will not only advance [the court's]

obligations to properly and efficiently facilitate notice in this proposed collective action [] but also

to be eminently reasonable." *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18-CV-4871 (N.D.

Ill. Mar. 20, 2019).  That ruling is attached hereto as <u>Exhibit 2</u>.

**B.    Apex Has Provided More Than Sufficient Evidence to Establish that Certain Members of the Putative Collective Are Subject to Binding, Valid and Enforceable Arbitration Agreements.**

Plaintiffs haphazardly assert that "*some* of [the putative collective members] *may* have

signed" Apex's "inconsistently applied" agreements.  ECF No. 46 at 12–13.  Plaintiffs offer

precious little substance to support these speculative assertions.  Indeed, the argument that Apex's

agreements were "inconsistently applied" is proclaimed without any explanation or factual

support.  In reality, upon their hire by Apex, over 54% of the Technical Recruiters that Plaintiffs

seek to conditionally certify entered into binding, valid and enforceable arbitration agreements

containing class and collective action waivers that preclude them from joining this action.

Indeed, in or around September 2014, Apex began asking its new hires (including all

Technical Recruiters) to execute a form "Dispute Resolution Agreement."  Ex. 1, ¶ 18.  This form

agreement is the same one that was executed by two of the named plaintiffs, Emily Dietrick and

Monica Jones, and which was the subject of Apex's Renewed Partial Motion to Compel

Arbitration and Stay Litigation (*See* Dkt. 37; *see also* Dkt. 38-01; Dkt. 38-02). Ex. 1, ¶ 19.[8]

Plaintiffs ultimately consented to that Motion, and the Court ordered that their claims be referred

---

[8] Apex incorporates the arguments made in that Motion and its accompanying memorandum (Dkt. 38) by reference.

to arbitration (Dkt. 48). Apex notes that these agreements contain provisions requiring that all employment-related disputes (including FLSA claims, which are identified specifically) be resolved via binding arbitration. Dkt. 38, at 8. Employees were not required to consent to these provisions, however. They were given the option to "opt-out" if they so chose. Dkt. 38, at 5. These agreements also contained class and collective action waivers stating "[t]here will be no right or authority for any dispute to be brought, heard, or arbitrated as a [class or collective] action." Dkt. 38, at 9.

After thoroughly reviewing its personnel records, Apex has determined that a putative collective defined as individuals employed by Apex in the positions of Recruiter ST (Sales Trainee), Hub Recruiter, and/or Recruiter during the last three years prior to the filing of the Complaint consists of 1,394 persons.[9] Ex. 1, ¶ 20. Of those individuals, 755 (54.2%) executed such Dispute Resolution Agreements without exercising their option to opt-out. *Id.*, ¶¶ 20-21.

This evidence is more than sufficient to establish that these persons are subject to binding arbitration agreements, will not be able to "opt in" to this action, and should not receive court-issued notice. It is well-settled that arbitration agreements governed by the FAA (such as these) are presumptively "valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 3 (2006). The class and collective action waivers are unquestionably enforceable under the Supreme Court's recent holding in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018). Plaintiffs have not argued, nor have they provided evidence, that these Dispute Resolution Agreements are unenforceable or invalid for any reason, either due to their substance (which is identical in all material respects) or in their presentation to

---

[9] Apex notes that Plaintiffs have failed to adequately define this putative collective. In addition, again, Apex believes that at best only a two-year lookback is appropriate here, which would reduce these numbers even further.

the Technical Recruiters at issue (which was part of a uniform onboarding process).  Indeed, less than two weeks ago, Plaintiffs and Apex jointly filed a <u>consent</u> motion to stay the claims of Dietrick and Jones "so that they can engage in individual, binding arbitration pursuant to their arbitration agreements."  Dkt. 47.

Apex has therefore met its (modest) evidentiary burden to establish that certain members of the putative class (indeed a <u>majority</u>) are subject to arbitration agreements.  Therefore, "it is error for a district court to order notice to be sent to that employee as part of any sort of certification."  *In re JPMorgan Chase*, 916 F.3d at 503.  If notice is issued to these individuals as Plaintiffs request, they will be unfairly misled and solicited to join in a collective action despite the fact that the preponderance of evidence (indeed, *all* of the evidence) shows that they are precluded from participating in hat collective as a matter of law.  Therefore, to the extent Plaintiffs have otherwise met their burden to conditionally certify the putative collective, that certification (and its accompanying notice) should be limited to individuals who did not execute Dispute Resolution Agreements or who affirmatively opted out.

## VI.    THE PROPOSED NOTICE AND CONSENT FORM ARE FLAWED

As set forth above, there are no grounds for certification of a collective action in this case.  In the event, however, that the Court determines that conditional certification and notice are appropriate, Apex objects to the content and form of Plaintiff's proposed notice, which is flawed and deficient in several material respects. First, Plaintiffs' proposed notice is misleading because it fails to explain to the putative collective members of their option to retain counsel other than Plaintiffs. ECF No. 46-1; *Ward v. Express Messenger Sys., Inc.*, No. 17-CV-02005-NYW, 2018 WL 1604622, at *8 (D. Colo. Apr. 3, 2018).  The proposed notice schedule is also unreasonable because Plaintiffs seek to impose a five (5) day deadline upon Apex to disclose names, last known

addresses, telephone numbers, last known personal email addresses, dates of employment, locations of employment, dates of birth, and last four (4) digits of the social security numbers of all putative collective members. ECF No. 46-1.

Given that Plaintiffs seek to send notice to a nationwide class of over 1,000 individuals— a five-day deadline is entirely unworkable.  Apex would need a minimum of 30 days to collect this *massive* amount of data.  Plaintiffs' proposed schedule also provides 60 days for recipients to return their consent forms – an unduly long period of time. Thirty days would be much more appropriate.  *See, e.g., King v. ITT Cont'l Baking Co.*, 1986 WL 2628, at *6 (N.D. Ill. 1986) (30 days); *Watkins v. Milliken & Co.*, 613 F. Supp. 408, 421 (W.D.N.C. 1984) (30 days); *Held v. Nat'l R.R. Passenger Corp.*, 101 F.R.D. 420, 423 (D.D.C. 1984) (30 days); *Johnson v. Am. Airlines, Inc.*, 531 F. Supp. 957, 962 (N.D. Tex. 1982) (21 days).  Finally, Plaintiffs seek to mail a "reminder notice" to individuals whose responses have not been received thirty (30) days after the date notice is mailed. A reminder notice is unnecessary. *Calderon v. Geico General Ins. Co.*, 2011 WL 98197, at *8 (D. Md. 2011).  Apex respectfully asks that if this Court grants conditional certification – which Apex urges the Court not to do for the reasons set forth above – that it allows Apex to submit a proposed notice for the Court's consideration.

## VII.   <u>CONCLUSION</u>

Plaintiffs have utterly failed to satisfy their burden to demonstrate that collective treatment is appropriate, even on a conditional basis. For this reason and those set forth fully above, Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice be denied.

Respectfully submitted,
APEX SYSTEMS, LLC

By:   /s *Laura D. Windsor*
       Laura D. Windsor
       Virginia State Bar No. 70354

Counsel for Defendant
WILLIAMS MULLEN, P.C.
P.O. Box 1320
Richmond, Virginia 23219
Telephone: (804) 420-6466
Facsimile: (804) 420-6507
lwindsor@williamsmullen.com

Amanda M. Weaver
Virginia State Bar No. 86782
Counsel for Defendant
WILLIAMS MULLEN, P.C.
P.O. Box 1320
Richmond, Virginia 23218-1320
Telephone: (804) 420-6226
Facsimile: (804) 420-6507
aweaver@williamsmullen.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2019, I electronically filed the foregoing

Memorandum in Opposition, using the Court's CM/ECF system, which will send a notification of

such filing (NEF), to the following:

> William C. Tucker
> Tucker Law Firm, PLC
> 690 Berkmar Circle
> Charlottesville, Virginia 22902
> bill.tucker@tuckerlawplc.com
>
> Benjamin L. Davis, III
> Kelly A. Burgy
> The Law Offices of Peter T. Nicholl
> 36 South Charles Street
> Suite 1700
> Baltimore, Maryland 21201
> bdavis@nichollaw.com
> kaburgy@nichollaw.com

> By:     /s *Laura D. Windsor*
>      Laura D. Windsor
>      Virginia State Bar No. 70354
>      Counsel for Defendant
>      WILLIAMS MULLEN, P.C.
>      P.O. Box 1320
>      Richmond, Virginia 23219
>      Telephone: (804) 420-6466
>      Facsimile: (804) 420-6507
>      lwindsor@williamsmullen.com

39181109_3.docx