IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

STEVEN CONNELL, individually
and on behalf of all similarly situated
employees,
        Plaintiff,

v.                                               Civil Action No. 3:19-cv-299-JAG

APEX SYSTEMS, LLC,
        Defendant.

## OPINION

Apex Systems, LLC ("Apex"), a national staffing agency, hires technical recruiters across the country to find potential job candidates for its clients. On January 2, 2019, five recruiters filed a collective action against Apex, alleging violations of the Fair Labor Standards Act ("FLSA") for failure to pay overtime wages. Since the lawsuit began, the parties have litigated various pretrial motions and engaged in discovery. On June 20, 2019, the Court conditionally certified the collective action.

Apex has filed a motion for summary judgment to enforce arbitration agreements signed by ninety-four putative class members.[1] The plaintiffs oppose the motion, arguing that Apex has waived its right to invoke the Federal Arbitration Act ("FAA") based on its litigation conduct.

Because Apex has not waived its right to invoke the FAA and enforce the agreements, the Court will grant Apex's motion for summary judgment as to the arbitration agreements.

---

[1] The parties voluntarily dismissed two of the ninety-four plaintiffs from this lawsuit, so the Court only considers the claims as to the remaining ninety-two plaintiffs named in Apex's motion.

# I. <u>BACKGROUND</u>

Apex, a national staffing agency, hires technical recruiters to find potential job candidates for employers. Some of the technical recruiters signed arbitration agreements when they signed their employment contracts. On January 2, 2019, five recruiters[2] filed a collective action in the United States District Court for the District of Maryland, alleging that Apex did not pay its recruiters for overtime hours worked because it misclassified them as "exempt" salaried employees, in violation of the FLSA. On January 29, 2019, Apex filed a motion to transfer the case to this Court, a motion to compel arbitration[3] and stay the litigation as to Dietrick's and Jones' claims, and an answer to the complaint.[4] The parties fully briefed both motions.

On April 18, 2019, the District of Maryland granted Apex's motion to transfer, denied without prejudice its motion to compel arbitration and stay the litigation, and transferred the case to this Court. On May 3, 2019, Apex filed a renewed motion to compel arbitration of Dietrick's and Jones' claims. On May 16, 2019, the parties filed a consent motion to submit Dietrick's and Jones' claims to arbitration and stay the proceedings as to those claims, which the Court granted.

On May 10, 2019, the remaining plaintiffs filed a motion for conditional certification of the collective action. On June 18, 2019, the Court held a hearing on the motion. On June 19, 2019, the Court entered a pretrial order that set the case deadlines, including the discovery and

---

[2] The complaint originally named Emily Dietrick, Steven Connell, Brock Deel, Monica Jones, and Tyler Suite as plaintiffs. Other plaintiffs have joined this lawsuit by notice or motion, or through the opt-in process. As discussed below, the Court has stayed the claims of two named plaintiffs, and it has dismissed other plaintiffs pursuant to notices of dismissal. Steven Connell is the only named plaintiff whose claims the Court has not stayed or dismissed.

[3] Apex asked the Court to compel arbitration as to Emily Dietrick and Monica Jones because they signed arbitration agreements.

[4] Apex refiled its motion to transfer and partial motion to compel arbitration on February 8, 2019, after the court struck the motions for procedural reasons.

2

trial deadlines. The pretrial order also allowed Apex to "move for early summary judgment on the arbitration agreement issue no later than September 17, 2019." (Dk. No. 53, at 2.)

On June 20, 2019, the Court conditionally certified a class of "[a]ny and all full-time Technical Recruiters who were paid a salary during the last three (3) years prior to the filing of the Complaint." (Dk. No. 54, at 1.) The conditional certification order required Apex to provide the plaintiffs with a list of all salaried technical recruiters employed at any time from January 2, 2016, to present within thirty days, and set the notice and opt-in period schedule.

On July 19, 2019, the Court entered a stipulated protective order governing discovery in this case. The protective order did not address class-wide discovery. On August 15, 2019, the Court extended the opt-in deadline until October 22, 2019, to allow Apex time to supplement the technical recruiter list with putative plaintiffs not on the original list. On September 12, 2019, the Court granted the parties' joint motion to extend Apex's deadline for early summary judgment to October 29, 2019.

By late October, over two hundred plaintiffs had opted into the class.[5] Between October 22, 2019, and October 31, 2019, Apex issued thirty-two discovery requests (eleven interrogatories, ten requests for production, and eleven requests for admission) to 226 class members. The plaintiffs contend that counsel "immediately set out to respond to" the discovery requests and expended "numerous hours scheduling and interviewing those opt-in [p]laintiffs, and preparing their discovery responses." (Dk. No. 85, at 2-3.) On October 29, 2019, Apex filed its early motion for summary judgment regarding the enforceability of the arbitration agreements for ninety-three opt-in plaintiffs.

---

[5] On November 7, 2019, the Court granted a consent motion to join two additional opt-in plaintiffs.

3

On November 5, 2019, the plaintiffs moved for a protective order, asking the Court to temporarily stay discovery and to limit discovery "to a reasonable representative sample of opt-in [p]laintiffs." (Dk. No. 82., at 7.) The plaintiffs contend that Apex only agreed to "excuse [the] [p]laintiffs with arbitration agreements from responding to discovery . . . [until after the] [p]laintiffs had already filed their [m]otion for a [p]rotective [o]rder . . . [and] spent weeks preparing discovery responses for these opt-in [p]laintiffs." (Dk. No. 85, at 4.)

The Court held a hearing on the motion for a protective order on November 15, 2019. The Court granted the motion and directed the plaintiffs to prepare an alphabetical list of all the opt-in plaintiffs. The Court ordered the plaintiffs to respond to the discovery requests issued to every tenth plaintiff on that list. The Court permitted Apex to designate five additional plaintiffs to respond to discovery requests and to depose ten opt-in plaintiffs.

On November 22, 2019, the Court granted the parties' consent motion for leave to amend Apex's early motion for summary judgment. Apex's amended motion added one additional opt-in plaintiff.[6] Of the ninety-four plaintiffs at issue in Apex's amended motion, the parties have already dismissed two plaintiffs' claims. Thus, the Court considers the dispute resolution agreements for the remaining ninety-two plaintiffs.[7]

---

[6] Since Apex filed its amended motion, the parties have filed multiple notices of voluntary dismissal, a motion to modify the pretrial order, and motions for summary judgment. Apex has also filed a motion to decertify the collective action.

[7] Specifically, the parties dismissed Carmen Aikins' and Jessika Harville's claims. Attachment A to this Opinion lists the remaining ninety-two plaintiffs.

4

## II. DISCUSSION[8]

### *A. Genuine Dispute of Material Fact*

Apex has attached the agreements signed by the plaintiffs at issue. Each agreement requires employees to arbitrate disputes arising out of their employment with Apex. (*See, e.g.*, Dk. No. 99-1, at 8 ("Employee and [Apex] agree to arbitrate any dispute arising out of or related to Employee's employment with, or termination of employment from, [Apex]. . . . [T]his Agreement requires that all disputes must be resolved only by an arbitrator through final and binding arbitration and not by a court or jury trial.").) The arbitration provisions apply to claims brought under the FLSA. (*See, e.g., id.* ("This Agreement . . . applies, without limitation, to disputes regarding the employment relationship, any . . . federal wage-hour law, compensation, . . . and claims arising under . . . [the] Fair Labor Standards Act.").) The agreements contain collection action waivers. (*See, e.g., id.*, at 9 ("There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action.").) Each employee named in the motion signed an agreement containing these provisions.

The plaintiffs do not contend that they signed unenforceable agreements. Instead, they argue that Apex's litigation conduct has waived its right to invoke the FAA. The Court, therefore, will turn to whether Apex has waived its right to enforce the agreements.

---

[8] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B. Legal Arguments

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see* 9 U.S.C. §§ 1-16. This policy stems from Congress's position that "arbitration constitutes a more efficient dispute resolution process than litigation." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

"[W]hether parties have agreed to 'submi[t] a particular dispute to arbitration' is typically an 'issue for judicial determination.'" *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). To compel arbitration under the FAA, a litigant must show

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal . . . to arbitrate the dispute.

*Adkins*, 303 F.3d at 500-01. "The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute." *Lovelady v. Five Star Quality Care-VA, LLC*, No. 4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018). "[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co.*, 561 U.S. at 297. When a valid arbitration agreement exists and the issues in the case fall within the scope of that agreement, "[a] district court . . . has no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500.

Because the parties do not dispute the validity of the arbitration agreements, the Court must require the parties to arbitrate their disputes unless the plaintiffs establish that Apex has waived arbitration through its litigation conduct.[9]

Although the FAA reflects "a liberal policy" regarding arbitration, this policy "is not without limits." *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, 880 F.3d 135, 140 (4th Cir. 2018); *see also Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). "A litigant may waive its right to invoke the [FAA] by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987). "But even in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, '[t]he dispositive question is whether the party objecting to arbitration has suffered actual prejudice.'" *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Fraser*, 817 F.2d at 252); *see also Maxum Founds., Inc.*, 779 F.2d at 981-82. "[D]elay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id.* Any doubts about the scope of arbitrable issues, including allegations of waiver, "should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

*1. Delay*

"No bright line defines when a party has been sufficiently prejudiced by a delay to invoke waiver." *Fasig-Tipton Ky., Inc. v. Michaelson*, 955 F.2d 40 (4th Cir. 1992) (table decision). The

---

[9] This case satisfies the four *Adkins* factors. First, the plaintiffs filed this lawsuit alleging that Apex violated the FLSA, so a dispute exists. Second, the plaintiffs signed agreements that require that all disputes, including FLSA claims, "be resolved only by an arbitrator through final and binding arbitration and not by a court or jury trial." (*See, e.g.*, 99-2, at 8.) Third, the plaintiffs allege FLSA violations for work performed across the country, which relates to interstate commerce. Fourth, the plaintiffs oppose this motion and therefore refuse to arbitrate the dispute.

7

Court must consider the delay in context, "examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the other surrounding circumstances." *Id.* "[A] delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 703 (4th Cir. 2012) (finding no prejudice in a six-and-a-half-month delay).

Here, the plaintiffs filed their complaint on January 2, 2019. Apex filed a motion to compel two of the named plaintiffs to arbitration and to stay the litigation on January 29, 2019, and a renewed motion to compel arbitration on May 3, 2019. The parties agreed to arbitrate those two plaintiffs' claims and to stay the proceedings as to those plaintiffs on May 16, 2019. On June 18, 2019, at the hearing on the motion for conditional certification, the parties discussed the arbitration issue as to opt-in plaintiffs. On June 19, 2019, the Court entered a pretrial order that set the discovery deadline and an early summary judgment deadline for the arbitration issue.[10] The Court conditionally certified the collective action the following day.

Apex, therefore, first invoked the FAA as to plaintiffs who had signed agreements approximately one month after the plaintiffs filed this action. The parties brought this issue to the Court's attention before discovery started, and the Court entered a pretrial order setting an early summary judgment deadline on the opt-in plaintiffs' arbitration agreements. Further, the plaintiffs agreed to Apex's request to extend the early summary judgment deadline to October 29, 2019, and therefore were aware of when Apex would seek to compel arbitration. Thus, the plaintiffs cannot

---

[10] The pretrial order set the deadline for September 17, 2019. Apex omitted potential opt-in plaintiffs from the initial list of putative class members, so the Court extended the opt-in period to October, 2019. As a result, the Court also extended Apex's early summary judgment deadline to October 29, 2019.

argue that they "were ... surprised to be served with [Apex's] present summary judgment motion," even in light of Apex's discovery requests. (Dk. 85, at 3.)

In sum, Apex filed its first motion to compel arbitration shortly after the plaintiffs filed their complaint, the parties discussed this issue at the hearing on conditional collective action certification, and Apex filed its motion for summary judgment by the deadline set by the Court. The plaintiffs, therefore, have not demonstrated actual prejudice from Apex's delay. *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) (finding no prejudice in a four-month delay); *Maxum Founds., Inc.*, 779 F.2d at 982 (finding no prejudice in a three-month delay).

### 2. Trial-Oriented Activity

The plaintiffs also argue that they have suffered actual prejudice because (1) Apex has used the litigation process to get discovery from opt-in plaintiffs not available in arbitration, and (2) they have had to respond to Apex's discovery requests for the opt-in plaintiffs Apex wants to send to arbitration, which has burdened them.

The party alleging prejudice "bears a heavy burden of proof." *Fasig-Tipton Ky., Inc.*, 955 F.2d at 40. "This burden is not necessarily satisfied even if the party has spent time and resources in discovery activity and motions practice." *Id.* A party seeking arbitration need not "ignor[e] court-ordered discovery deadlines and assum[e] the risk that its motion under the [FAA] will be unsuccessful" to avoid a finding that it has waived arbitration. *Maxum Founds., Inc.*, 779 F.2d at 982.

In *Rosa-McLarty*, the Fourth Circuit found no prejudice to the plaintiff when the defendant removed the case to federal court, filed an answer, proposed a bifurcated discovery plan, and took the plaintiff's deposition. 700 F.3d at 704; *see also Garrett v. Margolis, Pritzker, Epstein & Blatt,*

*P.A.*, 861 F. Supp. 2d 724, 729 (E.D. Va. 2012) (finding no prejudice when the defendant filed two motions to dismiss on the merits). In contrast, the plaintiff suffered prejudice when the defendant "filed multiple motions for summary judgment, served discovery, and twice asked the district court to certify questions of state law to the South Carolina Supreme Court." *DeGidio*, 880 F.3d at 141.[11]

Here, Apex did not file a motion to dismiss or any other dispositive motions before seeking arbitration as to the ninety-two plaintiffs at issue here, so Apex did not try to litigate this matter on the merits. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000). Although Apex served discovery on the opt-in plaintiffs with arbitration agreements, Apex could serve discovery on these plaintiffs while they remained in the case. *See Maxum Founds., Inc.*, 779 F.2d at 982. Further, even if Apex might not have been able to seek this discovery through arbitration, the Court's ruling on the plaintiffs' motion for a protective order, at a minimum, limited the discovery Apex received as to these plaintiffs. This ruling also reduced the burden the plaintiffs suffered by responding to Apex's requests because it restricted Apex to representative discovery.

Because neither Apex's delay nor its trial-related activities demonstrate that the plaintiffs have suffered actual prejudice, Apex has not waived its right to enforce the arbitration agreements.

### C. Dismissal or Stay

If the Court grants Apex's motion, the plaintiff asks the Court to stay this action, rather than dismiss the claims. The plaintiffs point out that the Court stayed the case as to two plaintiffs'

---

[11] *See also Fraser*, 817 F.2d 250 (holding that the defendant had waived arbitration after "eight discovery motions, four of which were made by [the defendant,] . . . two motions in limine, one motion for partial summary judgment, . . . three motions to dismiss, . . . four status conferences, five hearings on pending motions, . . . two pretrial conferences[,] [and] [t]wo trial dates [which] were cancelled prior to the arbitration motion hearing date").

claims, pursuant to the parties' consent motion in May, 2019. It argues that the Court should do the same here.

The plaintiffs have brought this as a motion for summary judgment. Federal Rule of Civil Procedure 56 requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] Fed. R. Civ. P. 56(a); *see also Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 107 (4th Cir. 2012) (affirming a district court's grant of summary judgment requiring arbitration). Moreover, when faced with motions to dismiss or to compel arbitration, the Court has the discretion to dismiss the case rather than stay it if the Court determines that the agreement covers all issues raised in the litigation. *See Quality Plus Servs., Inc. v. AGY Aiken LLC*, No. 3:16CV727, 2017 WL 2468792, at *6 (E.D. Va. June 7, 2017) ("The law remains unsettled as to whether a court should stay or dismiss a case when all claims are subject to arbitration, but no question exists that the Court has the discretion to take either option." (footnote omitted)).

Neither party disputes that the arbitration agreements cover the plaintiffs' claims. Indeed, the agreements specifically include claims arising under the FLSA within their definitions of arbitrable "disputes." Because Apex has established that it is entitled to summary judgment and the Court has the discretion to decide whether to stay the case as to these plaintiffs, the Court will grant the motion rather than stay the case.[13]

---

[12] Apex asks the Court to enter judgment "on the grounds that each [b]arred [p]laintiff voluntarily entered into and is bound by an enforceable [d]ispute [r]esolution [a]greement." (Dk. No. 99, at 15.) Thus, the Court will grant the motion as to the arbitrability of the agreements but makes no ruling about the merits of the plaintiffs' claims.

[13] The plaintiffs also request "attorney's fees for the time spent preparing the discovery responses for" the opt-in plaintiffs at issue in this motion. (Dk. No. 85, at 8.) First, the Court already limited the prejudice the plaintiffs suffered by granting their motion for a protective order. Second, the

## III. CONCLUSION

For the foregoing reasons, the Court will grant Apex's motion for summary judgment. Apex has not waived its rights to invoke the arbitration agreements through its litigation conduct, and the plaintiffs who signed arbitration agreements must proceed to arbitration. The Court will dismiss those plaintiffs' claims without prejudice. The Court will deny the request for attorney's fees.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 21 January 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

plaintiffs have neither specified the amount sought nor supported their request with documentation. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009) ("[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate."). The Court, therefore, will deny the fee request.